13m 273
102  530

Darnall, &c. *vs.* Adams, &c.                    CHANCERY.

APPEAL FROM BOURBON CIRCUIT.                    Case 29.

Judge MARSHALL delivered the opinion of the court.   October 8.

1. An estate for life in slaves belonging to a *feme sole*, vests in the husband absolutely on her marriage, and his ignorance of his right will not divest it.

2. A general residuary devise, which may include slaves, is not a specific devise of slaves, so as to pass the title in the slaves, not named in it, to the devisee; but they pass to the executor for the payment of debts. (*Wood's ex'ors.* v. *Wickliffe*, 5 B. *Monroe*, 189; *McDowell's adm'r.* v. *Lawless*, 6 *Monroe*, 141.)

3. When the right of action vests in the executor, the disability of the heir will not prevent the operation of the statute of limitation to bar the right of action. (*Couch's heirs* v. *Couch's adm'r.* 9 B. *Monroe*, 160; *Ib.* 425.)

4. Husband and wife must unite in a suit for the recovery of the wife's interest in a residuary devise, and the executor must be a party.

In 1833 W. Grimes died leaving a will, by which, after payment of debts, he gave his whole estate to his wife during her life, and then to his two brothers. Mrs. Grimes being possessed under this devise of three slaves, Giles, Moses, and Judy, afterwards married Elijah Wigginton who had a son and daughter by a former marriage. In January, 1842, Wigginton died, having first made a will, by which he directed the payment of his debts, and after payment of debts he gave to his wife during her life one-third of his personal estate, also certain lots and the appurtenances on which he resided, also his negro girl Artimesia and one-third of his negro man David. The third clause of the will gives to testator's son John H. and his daughter Mary Anne, and their heirs forever, all the rest of testator's estate "both real and personal, mixed or unmixed, in law or equity, of what kind or nature soever it may be," to be equally divided between them, their respective portions to be received on marriage or arrival at full age. And the desire is expressed, that so long as his wife and children should live together as one family, his house-

Case stated.

DARNALL, &c.
vs.
ADAMS, &c.

hold and kitchen furniture and other personal property should remain unsold for their use and support, and that all his negro slaves (there having been four young ones besides those above named,) remain with them. And, also, that while they continue as one family they shall have the benefit of certain lands for the equal and general benefit and support of the family. It will be observed that neither of the three slaves which had passed by the will of W. Grimes to his widow, afterwards Mrs. Wigginton, is mentioned in this will of Wigginton. And it is entirely clear from the evidence that it was his belief that he had no interest in or power over them except during his own life, and that upon his death they would become the property of his widow during her life as they were before he married her. This belief he expressed to his wife and others while his will, written only a few days before his death, was being prepared, and declined making any disposition of these slaves by his will, because he did not consider that he had a right to dispose of them. He had, however, controlled and treated them as his own from the time of his marriage, and would no doubt have disposed of them expressly by his will had he not supposed that his right in them would cease at his death.

It is, however, well settled, that by the marriage of a woman who has a present vested estate in slaves in possession for the term of her life, her entire interest in them vests absolutely in her husband, and the slaves are his as they had been hers, during her life. This title which Wigginton acquired by his marriage with Mrs. Grimes was not divested by any act of his during his life, nor by his mistaken conviction that the slaves were his during his own life only, and would then revert to his wife, nor by the expression of that conviction to his wife, nor by the consequent omission to notice them in his will. Notwithstanding all this, the property in the slaves during the life of his wife remained in him till the moment of his death, formed a part of his estate afterwards,

1. An estate for life in slaves belonging to a *feme sole*, vests in the husband absolutely on her marriage, and his ignorance of his right will not divest it.

and must be regarded as being embraced in the broad terms by which the residuum of his estate, after providing for his debts and for his wife, is devised to his two children. If it was a part of his estate at and after his death, it was included in the residuary devise. If it was not a part of his estate, and, therefore, not included in the devise, it did not pass to his executor, nor descend to his heirs, but was wholly lost to them, which cannot be admitted as a proper consequence of his mere ignorance or mistake as to his right of disposition.

But although this residuary devise includes the testator's interest in these slaves, it is no more a specific devise of the slaves than it is of any and every other article which may be shown to have been included in it. In the case of *Wood's ex'ors.* v. *Wickliffe,* 5 *B. Mon.* 189, it was decided, under a will which after payment of debts makes specific bequests, that a general residuary devise (though slaves were found to be included in it,) was not a specific devise so as to pass the title in slaves not named in it to the devisees, and that notwithstanding our statute of 1800, declaring that slaves shall pass by will as lands, the title to the slaves, covered by the residuary clause, passed to the executor for payment of debts, and not to the residuary devisees. In the case of *McDowell's adm'r.* v. *Lawless,* 6 *Monroe,* 141, referred to in the case just cited, the court clearly expresses the opinion that the statute operates only upon slaves specifically devised. And although in several cases the court states, in general terms, that by the statute the title to slaves devised vests in the devisee without the assent of the executor, who has neither the title nor the right of action, it does not appear that in those cases there was any call for discrimination ; and in several other cases, the proposition is more restricted, and specific devises are expressly mentioned in stating the effect of the statute upon the title.

In *Wood's ex'ors.* v. *Wickliffe, supra,* the decisive consideration seems to have been, that everything not

2. A general residuary devise, which may include slaves, is not a specific devise of slaves, so as to pass the title in the slaves, not named in it, to the devisee; but they pass to the executor for the payment of debts. (*Wood's exo'rs.* v. *Wickliffe,* 5 *B. Monroe,* 189; *McDowell's adm'r.* v. *Lawless,* 6 *Monroe,* 141.)

specifically devised was subjected by the will itself to the payment of debts and legacies; that nothing was given by the residuary clause but what might remain, and, therefore, that the slaves found to be included in that clause were not devised away from the executor, but were left as assets in his hands for payment of debts and legacies, for which he was to provide, and of the demands of which he was to judge. The same considerations apply substantially to the present case. And although it may not be strictly true that the operation of the statute depends merely upon the question whether the devise of slaves is specific or otherwise, and although the fact that a specific devise of slaves is preceded by the words "after payment of debts," might not affect the question of title, we are not prepared to overrule the case of *Wood's ex'ors.* v. *Wickliffe*, which, in principle, decides that the slaves not named nor specially referred to in the residuary clause, but made or left subject to debts, &c., do not pass by it immediately to the residuary devisee, but vest in the executor as assets. This conclusion seems to involve rather a construction of the particular will than of the statute. We do not admit, however, that the statute, though broad and peremptory in its terms, is wholly beyond the reach of construction or of discrimination in its application. On the contrary, the question as to the legislative intention is open to inquiry not merely upon the particular words used, but also by reference to various other considerations, as by a comparison with other principles and laws, also by a consideration of the consequences of a particular construction, and of the motive, spirit, and object of the particular enactment. Without entering into these considerations we are willing to rest upon the authority of the case last named, and upon the intimations of opinion above referred to. We, therefore, decide in this case, that the title to the slaves now in question did not vest in the children of Wigginton under the residuary clause of his will; but, so far as

this clause and the operation of the statute upon it are concerned, it passed to the executor.

It is contended, however, that the clause of the will expressing the testator's wish that while his wife and children lived together as one family all his negro slaves should remain with them, is itself a specific devise of these slaves, which, under the statute, passed to the children, or at least to the widow and children while they should live together, and thus withdrew them from the executor. Without inquiring into the consequences deduced from this position with respect to the rights involved in this case, we think the position itself is untenable. The clause does not amount to a devise of the slaves. It relates only to the temporary possession, and was probably intended for the benefit of the young slaves. And as, in case there had been no disposition of them by the residuary clause, the title must have passed to the executor by operation of law, notwithstanding this clause, there being a residuary devise covering the slaves did not give greater efficacy to this clause.

But the executor of Wigginton entertained the same opinion with respect to these slaves that had been entertained and expressed by his testator. He considered them as forming no part of the testator's estate, but as belonging to his widow during her life. He consequently did not include them in any inventory, nor pay taxes on them, nor assume any ownership or control over them, but left them in the possession of the widow as hers. And she concurring in the opinion of the testator and executor as to her right, retained the possession, claiming and controlling the slaves as her own for her life, until her marriage in 1844 with Darnall, who subsequently possessed and claimed them in the same manner. It appears that Mrs. Wigginton and the two children of Wigginton resided together as one family from the death of the testator until the marriage of his daughter Mary Anne to William M. Adams, on the 7th of February, 1844. About that time the family separated. And

DARNALL, &c.
vs.
ADAMS

march, 1844, a division of the personalty and slaves of the estate was made by commissioners. But under the impression of the executor, communicated to the commissioners, that the three slaves above referred to were no part of Wigginton's estate, they were not brought into the division, but were left in the possession of Mrs. Wigginton as hers. In 1844 she intermarried with Darnall, and in January, 1849, Wm. M. Adams, the husband of M. A. Wigginton, filed a bill in his own name alone against Darnall and wife and John H. Wigginton, one of the residuary devisees, praying for a division of these three slaves, and for an account of hires, &c. In May, 1849, the wife of the complainant, Adams, died, and in October, 1849, he having been appointed administrator of her estate, filed an amended bill, in which he states the death of his wife, and that he had obtained administration, &c., and claims a division and account, &c. John H. Wigginton answered, concurring in the prayer of the bill, and making his answer a cross bill against Darnall and wife. These defendants deny the right of the claimants, deny the jurisdiction of the court, rely upon their possession and the statute of limitations as a bar to all claims to the slaves, and set up a demand for expenses incurred by Mrs. Wigginton in the support of the two children of Wigginton, and also for support of the young slaves, from his death until the separation of the family. Before the hearing John H. Wigginton died, and his administrator appeared as a party, but filed no pleadings. And the court by its decree deprived Darnall and wife of the possession of the slaves, which seem to have been placed in the hands of receivers or commissioners to be held during the life of Mrs. Darnall, giving the complainant one-half of the annual profits, and decreeing in his favor against Darnall the sum of $537 and costs.

Without noticing other objections to this decree, we are of opinion that it is erroneous in disregarding the plea of the statute of limitations, which, according to

3. When the right of action vests in the ex-

our view of the case, presents a complete bar to the claim. The original bill, it is true, was filed within five years after the marriage of Mary Ann Wigginton, who was an infant when she married. But the legal title to these slaves vested, as already shown, in the executor and not in the devisees, and the disability of the devisees, or either of them, could not prevent the bar from running against the executor, who alone had the right of action. That the claim of the devisees is, under such circumstances, barred by the lapse of time, which bars the executor, is explicitly decided in the cases of *Couch's heirs* v. *Couch's adm'r. &c.* 9 *B. Monroe*, 160, and *Rosson* v. *Anderson*, 9 *B. Monroe*, 425, and in other cases. And as there can be no doubt in the present case that the possession of Mrs. Wigginton, and afterwards of her husband Darnall, was adverse to the executor, and, under claim of right well known to him, and continued to be adversely held for more than five years before even the original bill in this case was filed, the right of the executor being barred, the right and claim of the devisees was also barred, and could not be then asserted effectually against the plea of the statute, notwithstanding the disability of both or either of them.

With regard to the frame of the original suit, we remark that even if M. A. Wigginton had, at her marriage, an equity which could be asserted on the facts stated in the bill, the suit should have been brought jointly by herself and husband. This is a well settled rule in equity. But the bill does not make out such an equity, nor show any reason why the claim is to be taken out of the hands of the executor. It does not even make the executor a party. Nor does the complainant show such a state of the possession, as that if his wife had had the title at the time of his marriage, that title would have vested in him by the marital law. But the answers and the proof show that the possession was, in fact, adverse to any title claimed under Wigginton, and, therefore,

*Margin notes:*

DARNALL, &c.
vs.
ADAMS, &c.

ecutor, the disability of the heir will not prevent the operation of the statute of limitation to bar the right of action. (*Couch's heirs* v. *Couch's adm'r.* 9 B. Monroe, 160; *Ib.* 425.)

4. Husband and wife must unite in a suit for the recovery of the wife's interest in a residuary devise, and the executor must be a party.

whatever title his daughter had as devisee did not by her marriage vest absolutely in her husband.

Although the slaves in question were, in law, a part of the estate of the testator Wigginton, and subject to the disposition made by his will, yet as they were not in fact so regarded by him, but were regarded as becoming, by law, the property of his widow on his death, and as the testamentary provision for her was made by him and accepted by her under this view of their respective rights, we are of opinion that the acceptance of the provision did not estop the widow from asserting her claim which had been recognized by her husband, nor place her under any obligations to other devisees or to the executor, with respect to these slaves; and that her possession of them under this claim, recognized by her husband and acquiesced in by the executor, not as a possession under the will but as held in her own right, must be regarded as her separate possession adverse to all the world, notwithstanding the fact that the infant devisees lived with her. She held the possession not for the devisees nor jointly with them, but exclusively for herself and as her own during her life, and the devisees had no possession, either personally or by another for them. Nor do we suppose that the testator intended to vest in his children any possession or right of possession while they remained under age and unmarried, or that the provision on this subject affected the title of the executor, or his right of action against the widow claiming and holding a hostile possession. There is no room for the presumption that the possession was in the children. It was in the widow alone under claim of right. If, therefore, the legal title had vested in the children by force of the residuary clause in their father's will, it was but a chose in action, because the possession was adverse, and known to be so; and after the marriage of the female devisee her interest could only have been asserted, whether at law or in equity, in a joint suit in the name of her husband and herself. But as already seen, the devise did not pass

the legal title immediately to the devisees, but left it to pass to the executor as assets. And his acquiescence in the adverse claim of the widow, if it might have furnished a ground for a suit in equity in the name of the devisees or either of them for the assertion of their right, did not, *ipso facto*, pass the title from the executor to the devisees nor furnish ground for inferring his assent to their title.

But the original bill does not allege the acquiescence and recognition of the executor. And if from the apparently final settlement of the estate of Wigginton, which appears by the evidence to have been made some years before this bill was filed, but after the complainant's marriage, it may be inferred that the executor assented to the title of the devisees under the residuary clause, or that being then freed from subjection to the testator's debts, it vested in them, the bill does not allege this settlement or any other fact which might have passed the title from the executor. And if it had shown such fact, still, as the statute of limitations would have commenced running against the executor while the title was in him, it would have continued to run notwithstanding the infancy of those in whom the title afterwards vested. It would, therefore, bar the present suit, even if the title by such intermediate fact would not have vested in the complainant to the extent of his wife's interest, and whether it did or not.

With respect to the suggestion that Darnall and wife should be still ruled to make an election whether they will take these slaves and give up the benefit of the will, or the contrary, we remark, in addition to what has already been said, that if this was at first a case for election, which under the circumstances already stated we do not admit, Mrs. Darnall having, since the death of her husband, acquired title to the slaves in contest by length of possession, the claim that she shall now elect is as effectually barred by the lapse of time and the statute of limitations as is the direct claim to the slaves themselves.

It follows, from these views of the case, that the complainant's bill, and also any claim on behalf of John Wigginton, should have been dismissed. But we think the defendants were entitled to nothing on their cross bill which was properly dismissed. Wherefore the decree, so far as it gives relief to the complainant and recognizes the right of John Wigginton, and denies the right of the defendants *to the* slaves in contest, during the life of Mrs. Darnall, is reversed, and the cause remanded with directions to dismiss the bill with costs. John Wigginton's cross bill stands abated.

*Smith, Robinson & Johnson,* for appellants; *Davis,* for appellees.